**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

                       :

**JOHN R. GAMMINO,**          :
               **Plaintiff,**      :
    **v.**                      :      **CIVIL NO. 10-2493**
                       :

**SPRINT COMMUNICATIONS CO. L.P., et al.,** :
              **Defendants.**     :
                       :


## <u>MEMORANDUM OPINION AND ORDER</u>

**RUFE, J.**                                                **July 28, 2011**

       John Gammino brings this action alleging Sprint Nextel and its subsidiaries ("Sprint")

infringed Gammino's patents.  Sprint moves for summary judgment on the basis of collateral

estoppel for Counts I–IV [docs no. 26 & 38] arguing that: 1) the invalidation of patent claims 3,

17 and 31 of the '125 patent and 2 and 4 of the '650 patent by another court precludes Gammino

from re-asserting those claims in this litigation; and 2) the prior litigation also invalidates the

'650 and '125 patents in their entirety.[1]  Finally, Sprint moves this Court to sanction Gammino

for reasserting claims previously invalidated in the prior civil action [doc. no. 27].

---

[1]  Sprint also moves to dismiss claims V & VI, which relate to the '643 patent, arguing that
because those counts are unrelated to the patent claims in Counts I-IV,  litigating them with the '125 and
'650 patents will cause unnecessary delay and prejudice to Sprint.  Because that motion is unrelated to
Sprint's Motions for Summary Judgment, it is not resolved in this Opinion and Order, but by separate
Order.  <u>See</u> Doc. No. 98.

# I. Background

A.   Gammino's Patents

Plaintiff John Gammino is the owner of U.S. Patent Nos. 5,809,125 (the '125 patent) and 5,812, 650 (the '650 patent).[2]  The '650 and '125 patents are designed to block potentially fraudulent international calls.[3]  They describe methods and apparatuses for preventing or enabling international phone calls based on a series of numbers dialed prior to the recipient's phone numbers.[4]  The inventions are useful because telephone companies in the United States lose money when fraudulent make international calls are made (often using stolen calling-card numbers).

Every phone call is initiated by dialing a sequence of signals; each part of that sequence is composed of a "plurality" or "group" of dialing signals.  Each plurality is a code which conveys different types of information to a carrier's network.  For instance, a caller might dial "101-0288-011-44-207-499-9000."[5]  In that sequence, "101," the first plurality, makes the call an "access-code call" to be routed to a different carrier than the default carrier.  The second plurality, "0288," identifies the specific carrier, and the third plurality, "011," signals that the call is a direct-dialed international call, billable to the line from which it was dialed.  If the first plurality is replaced with the code "01," the network will know to bill the card to a calling card or collect, and not to the line from which it was dialed.

---

[2] The '125 patent was issued to Gammino on September 15, 1998, the '650 patent was issued on September 22, 1998. Sprint's Statement of Stipulated Mat. Facts in Support of Mot. for Summ. J. of Invalidity of '125 Patent Claims 3, 17, and 31 and '650 Patent Claims 2 and 4 ¶ 3 ("Sprint's Partial Summ. J. Stip.") (doc. no. 26-5).

[3] Second Am. Compl. ¶¶ 8, 9 [doc. no. 56].

[4] Sprint's Partial Summ. J. Stip. ¶¶ 1–3.

[5] Second Am. Compl. ¶¶ 14–16.

2

Gammino contends that the disputed claims of the '125 and '650 patents *selectively* block or transmit international calls based on predetermined digits, and do not—like prior art[6]—block *all* international calls.[7]  Instead, he asserts that the claims of his patents block only international access calls when predetermined digits occur in certain locations in the dialing sequence.[8]

B.    THE PRIOR LITIGATION

In April 2005, Gammino sued Southwestern Bell Telephone, L.P. in <u>Gammino v. Southwestern Bell Telephone L.P., et al.</u> ("SWB"),[9] alleging that it infringed forty-two claims[10] of the '125 patent and four claims of the '650 patent.[11]  Southwestern Bell counterclaimed for a declaration of invalidity and non-infringement,[12] and also moved for summary judgment on those bases.[13]  After Sprint filed for summary judgment, the Texas court instructed Gammino to reduce

---

[6] Prior art in patent law is information that is available to the public as of the date of the claim invention, including information that could be obviously inferred.  <u>See</u> <u>In re Coordinated Pretrial Proceedings In Antibiotic Antitrust Actions</u>, 498 F. Supp. 28, 32 n. 11 (E.D. Pa. 1980), <u>aff'd</u> 676 F.2d 51, 55 (3d Cir. 1982).

[7] Second Am. Compl. ¶¶ 9, 13.

[8] Second Am. Compl. at ¶ 9.

[9] 512 F. Supp. 2d 626 (N.D. Tx. 2007), <u>aff'd</u> 267 F. App'x. 949 (Fed. Cir. 2008), <u>cert. denied</u> 129 S. Ct. 346 (2008).

[10] Defs.' Reply to Gammino's Mot. for Summ. J. at 4 [doc. no. 49].

[11] <u>Gammino v. Southwestern Bell, L.P.</u>, 512 F. Supp. 2d 626, 630 (N.D. Tx. 2007) ("<u>SWB</u>"); Pretrial Disclosures of Asserted Claims at 1, <u>SWB</u> (doc. no. 48).

[12] <u>See</u> Counterclaim against John R. Gammino, <u>SWB</u> (doc. no. 5).

[13] <u>See</u> Motion for Summ. J. by Southwestern Bell Telephone, L.P., <u>SWB</u> (doc. no. 65).

the number of asserted claims.[14]  As directed, on October 20, 2006 Gammino filed the Amended

Disclosure, which reduced the number of asserted claims from forty-six to twenty-seven.[15]  On

March 23, 2007, the Texas court granted Southwestern Bell's motion for summary judgment, but

did not specify which claims it considered "asserted" and therefore invalidated.  The Federal

Circuit Court affirmed the district court's ruling in 2008[16] and the Supreme Court denied

certiorari on October 6, 2008.[17]

   Southwestern Bell proffered two theories in support of its motion for summary judgment

and counterclaim: 1) assuming—solely for the purpose of determining invalidity—that its

products were identical to the asserted claims in the '125 and '650 patents, because Southwestern

Bell sold its products one year before Gammino filed the patents, Gammino's patents were

invalid as anticipated by prior art, and; 2) alternatively, because Gammino's patents did not

operate as he claimed, Southwestern Bell's products were not infringing.

---

[14] Gammino's Sur-Reply to Defs.' Second Mot. for Summ. J. at 4, Ex. B (transcript of September 6, 2006 hearing where Texas court instructed Gammino to reduce the amount of asserted claims) [doc. no. 53].

[15] See Amended Disclosure of Asserted Claims and Infringement Contentions by John R. Gammino, SWB (doc. no. 87).

[16] Gammino v. Southwetern Bell Telephone, L.P., No. 2007-1257, 2008 WL 515011, * 1 (Fed. Cir. Feb. 27, 2008).

[17] 129 S. Ct. 346 (2008).

1.      The Texas Court's Invalidity Analysis

In SWB, Southwestern Bell (the accused infringer) asserted the invalidity of Gammino's '625 and '125 patents in its defense.[18]  In other words, it argued that the Patent Office should not have issued Gammino his patents in the first place.

Southwestern Bell argued that Gammino's patent claims were invalid by anticipation under the "on-sale bar."  Under that doctrine, a claim is invalid if 'the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States."[19]  Thus, any prior art on sale before the "critical date"[20]—whether originating from the inventor or a third party—invalidates the claim if it is an "embodiment" of the prior art.  A claim is considered an "embodiment" of prior art if clear and convincing evidence shows that the prior art contains each element of the claim.[21]  Under the patent statute, the validity of each claim in a patent must be considered separately.[22]  The patentee need show the absence of only one element from the prior art to survive an invalidation-by-anticipation defense.[23]

---

[18] Counterclaim against John R. Gammino, Gammino v. Southwestern Bell, L.P., 512 F. Supp. 2d 626 (No. 05-cv-0850, doc. no. 5).

[19] See 35 U.S.C. § 102(b).

[20] Patent courts typically refer to the date one year prior to the date of a patent application as the "critical date."

[21] Zenith Electronics Corp. v. PDI Commc'n. Sys., Inc., 522 F.3d 1348, 1363 (Fed. Cir. 2008); Tate Access Floors, Inc. v. Interface Architecural Res., Inc., 279 F.3d 1357, 1367 (Fed. Cir. 2002).

[22] 800 Adept, Inc. v. Murex Sec., Ltd., 539 F.3d 1354, 1368 (Fed. Cir. 2008).

[23] Kloster Speedsteel AB v. Crucible, Inc., 793 F.2d 1565, 1572 (Fed. Cir. 1986), overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337 (Fed. Cir. 2004).

A Defendant can meet its burden to show by clear and convincing evidence that the prior art was on sale prior to the "critical date" in two ways.[24]  In the typical case, a device or product was placed on sale prior to the critical date, "and the accused infringer must demonstrate that [it] actually embodied or rendered obvious the patented invention."[25]  In those cases, to determine if the pre-existing device actually embodied the patented invention, the court independently construes the patent claim and compares it to the prior art to determine if all elements are present.[26]

In rarer cases, the "entire basis of the patent infringement claim" is the patentee's contention that an accused device infringed his patents.[27]  In those cases, under Vanmoor v. Wal-Mart Stores, Inc.,[28] the defendant is only required to demonstrate by clear and convincing evidence that the *accused* device was on sale prior to the critical date.  The defendant's burden to prove that the device anticipated the patented invention is met by the patentee's own allegations of infringement; essentially, the patentee's accusations of infringement serve as a binding admission that satisfies the accused infringer's burden to prove invalidity by anticipation with

---

[24] See Abbott Lab. v. Geneva Pharm., Inc., 182 F.3d 1315, 1318 (1999).

[25] Evans Cooling Sys. Inc. v. General Motors Corp., 125 F.3d 1448, 1451 (Fed. Cir. 1997); cert. denied, 522 U.S. 1115 (1998), and petition for cert. filed, 531 U.S. 821 (2000).

[26] See generally Schumer v. Lab. Comp. Sys., Inc., 308 F.3d 1304 (Fed. Cir. 2002) (construing the terms of a patent to determine if the district court properly applied the on-sale bar).

[27] Vanmoor v. Wal-Mart Stores, Inc., 201 F.3d 1363, 1366 (Fed. Cir. 2000).

[28] 201 F.3d 1363 (Fed. Cir. 2000).

clear and convincing evidence.[29]  Thus, under <u>Vanmoor</u>, the Defendant need not adduce extrinsic

evidence to meet its burden.

The Texas court adopted the latter approach in <u>SWB</u> because it found clear and

convincing evidence that Southwest Bell's accused products were sold one year prior to the

"critical date."[30]  Citing <u>Vanmoor</u>, the Texas court concluded that:

> [T]he fact that Gammino bases his infringement claims against [Southwestern Bell]
> on [Southwestern Bell's] own prior art call-blocking services renders the claims of
> his patents invalid.  By accusing [Southwestern Bell] of infringing his patents when
> blocking 101-XXXX-011+ direct-dialed international calls, Gammino has, in effect,
> confirmed that [Southwestern Bell's] call-blocking methods satisfy all the
> limitations of his patents.[31]

Stated differently, the court held that *Gammino's own interpretation* of the claims of his patents

was a binding admission that prior art (the accused call-blocking services) invalidated the

asserted claims of his patents.  Importantly, because the court based its holding on Gammino's

admissions, it did not perform the typical "all-elements" analysis to determine if each component

of Gammino's claims was present in Southwestern Bell's pre-existing products.

2.    The Texas Court's Infringement Analysis

In an alternative holding, the Texas court held that Southwestern Bell had not infringed

Gammino's patents.  Unlike in its invalidity analysis, which had adopted Gammino's claim

construction, the Texas court independently construed the asserted claims to analyze

---

[29] <u>Evans Cooling Sys., Inc.</u>, 125 F.3d at 1451.

[30] <u>SWB</u>, 512 F. Supp. 2d at 636.

[31] <u>Id.</u>

infringement.[32]  To do so, the Texas court utilized intrinsic evidence, a reading of the claims, the

specification of the patents, and the prosecution history of the patents to construe the following

language in Gammino's claims: 1) The "preventing step," "means for preventing," and

"prevention means;" 2) "predetermined signals or digit sequences used for or to accomplish

international dialing;" and 3) "irrespective of."[33]  After construing those terms, the court

examined whether Gammino had "show[n] that the accused device [met] each claim limitation

either literally or under the doctrine of equivalents," and concluded that he had not.[34]

Significantly, the Texas court rejected, *inter alia*, Gammino's claim that his patents—like

Southwestern Bell's allegedly infringing patents—enabled the *selective* blocking of international

calls.[35]  Instead, the court found that Gammino's technology actually blocked all international

calls based on an analysis of the third pluralities.

C.    THE PENDING LITIGATION

On May 20, 2010, Gammino filed his Complaint in this Court, which asserted the '650

and '125 patents against Sprint.[36]  Counts I and II of Gammino's Complaint allege infringement

---

[32]  Id. at 638 ("In Section III of this Order, the Court assumed without deciding that Gammino's
interpretation of the claims of his patents was correct without construing the claims.  The Court
concluded that under Gammino's interpretation [Southwestern Bell's] prior call-blocking services
anticipated his patents rendering them invalid as a matter of law as set forth in Vanmoor.").

[33]  Id. at 638–46.

[34]  Id. at 638.

[35]  Id. at 639.

[36]  Later, Gammino filed an Amended Complaint [doc. no. 47], adding two new counts which
asserted the '643 patent against Sprint. (As noted, above, the '643 patents are not addressed in this
opinion).  Soon after filing his Amended Complaint, Gammino filed a Second Amended Complaint in

and inducement to infringe claims 8–14, 22–28, 35–41 of the '125 patent.  Counts III and IV allege infringement and inducement to infringe claims which were asserted—and invalidated—in the SWB litigation (specifically, 3, 17, and 31 of the '125 patent and 2 and 4 of the '650 patent).

Sprint has filed two separate motions for Summary Judgment.  In the first, Sprint argues that because the Texas court declared the undisputedly asserted claims of Gammino's patents invalid, the doctrine of collateral estoppel precludes Gammino from asserting claims 3,17 and 31 of the '125 patent and claims 2 and 4 of the '650 patent against Sprint.  In response, Gammino argues that he is not estopped from reasserting the specifically invalidated claims because the Texas court's failure to grasp the technical subject matter and issues deprived him of the opportunity to fully and fairly litigate the '125 and '650 patents.[37]

Sprint's second Motion for Summary Judgment mounts a broader attack, arguing that except for two dependent claims, all claims asserted in this action were actually asserted in SWB. In Sprint's view, because those claims were asserted, they were correspondingly invalidated by the Texas court; thus, Gammino is now estopped from asserting *any* claims of the '125 and '650 patents.  Alternatively, Sprint argues that even if some claims of the '125 patent were not subject to the Texas court's order, Gammino is precluded from reasserting those claims because the "invalidity issues framed, analyzed, and adjudicated in the 26 claims that were not withdrawn from SWB are identical to those presented in the 19 claims allegedly withdrawn and now raised against Sprint."[38]

---

order to list three other defendants—who were listed in ¶ 2 of the Amended Complaint—in the caption.

[37] Second Am. Compl. ¶¶ 60–64; Pl.'s Resp. to Mot. for Partial Summ. J. at 3–12 [doc. no. 33].

[38] Sprint's Suppl. Mem. Regarding Claim Preclusion of Mr. Gammino's '125 Patent Claims [doc. no. 88] at 1.

Gammino opposes Sprint's second motion, arguing that because he successfully withdrew certain claims from the litigation prior to the Texas court's order, it only invalidated the remaining twenty-two *asserted* claims of the '650 and '125 patents.[39]  In addition, Gammino emphasizes that the invalidity issues presented by the claims that were withdrawn are not identical to those presented by the invalidated claims.[40]  Finally, he argues that Rule 11 sanctions are inappropriate in this case.[41]  We will address each motion in turn.

## II. STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[42]  A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[43]  A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[44]

---

[39] See Pl.'s Resp. to Defs.' Second Mot. for Summ. J. at 3–6.; Pl.'s Post-Argument Brief in Opp. to D.'s Mots. for Summ. J. at 2 [doc. 89].

[40] Pl.'s Resp. to Defs.' Second Mot. for Summ. J. at 3–6.

[41] Pl.'s Resp. to Defs.' Rule 11 Mot. for Sanctions at 1 [doc. no. 28].

[42] Fed. R. Civ. P. 56(c) (2007).

[43] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[44] Id.

The movant has the initial burden of supporting its motion by reference to evidence that is capable of being admissible in a trial.[45]  If this initial requirement is satisfied, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial."[46]  The nonmoving party may meet this burden either by submitting evidence that negates an essential element of the moving party's claims, or by demonstrating that the movant's factual evidence is insufficient to establish an essential element of its claims.[47]  The facts the nonmovant relies on for these purposes also must be demonstrated by evidence that can be admitted at trial.[48]

In considering a summary judgment motion, the Court does not weigh the evidence or make credibility determinations.  Moreover, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[49]

## III. DISCUSSION

A.   SPRINT'S FIRST MOTION FOR SUMMARY JUDGMENT

1.   Collateral Estoppel in the Context of Patent Invalidity

While general principles of collateral estoppel are governed by the law of the regional circuit, even in a patent case,[50] the more exacting issue of the effect of a prior determination of

---

[45] Callahan v. A.E.V., Inc., 182 F.3d 237, 252 n.11 (3d Cir. 1999).

[46] Fed. R. Civ. P. 56(e)(2).

[47] Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).

[48] Callahan, 182 F.3d at 252 n. 11,

[49] Anderson, 477 U.S. at 255.

[50] As a general principle, Federal Circuit precedent governs issues of patent law, while the law of the regional circuit applies to non-patent matters.  See Midwest Indus., Inc. v. Karavan Trailers, Inc., 175

invalidity on current patent claims is one of patent law and is governed by Federal Circuit and Supreme Court precedent.[51]  In <u>Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, et al.</u>,[52] the Supreme Court held that "a prior determination of patent invalidity may be asserted as a defense to a subsequent attempt to enforce the patent, and . . . this defense must be accepted by a court unless the patentee demonstrates that he was denied a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful action."[53]  Thus, under <u>Blonder-Tongue</u>, the movant who asserts collateral estoppel satisfies its burden simply by establishing that a prior final judgment of invalidity has been rendered by another court.  The Court is bound to accept the defense unless the non-movant demonstrates that it did not have a "full and fair opportunity to litigate the validity" of its patent.[54]  "[T]he rationale of <u>Blonder-Tongue</u> extends to all prior determinations of invalidity; its application is not dependent on how the judgment of invalidity was reached."[55]

    2.    <u>Application</u>

Although Gammino concedes that the Texas court invalidated claims 3, 17 and 31 of the '125 patent and claims 2 and 4 of the '650 patent, he argues that he is not estopped from

---

F.3d 1356, 1359 (Fed. Cir. 1999); <u>see also</u> <u>Dana v. E.S. Originals, Inc.</u>, 342 F.3d 1320, 1323 (Fed. Cir. 2003).

    [51] <u>Pharmacia & Upjohn v. Mylan Pharm.</u>, 170 F.3d 1373, 1379 (Fed. Cir. 1999) ("In the patent infringement context, the legal standard for determining whether a patentee is collaterally estopped from asserting its alleged patent right was established by the Supreme Court in <u>Blonder-Tongue</u>.").

    [52] 402 U.S. 313 (1971).

    [53] <u>Stevenson v. Sears, Roebuck & Co.</u>, 713 F.2d 705, 709 (Fed. Cir. 1983).

    [54] <u>Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.</u>, <u>et al.</u> 402 U.S. 313, 342 n.37 (1971).

    [55] <u>Stevenson</u>, 713 F.2d at 712.

reasserting them because he did not have a full and fair opportunity to litigate the claims.  Sprint

disagrees, arguing persuasively that this is an "open and shut case of issue preclusion."[56]

Blonder-Tongue establishes that a judgment of invalidity has no collateral estoppel effect if

the patentee can show that she did not have a full and fair opportunity to litigate.[57]  Under Blonder-

Tongue a court considers the following factors to determine whether the patentee had that

opportunity:

> (1) whether the patentee was the plaintiff in the prior suit and chose to litigate at
> that time and place; (2) whether the patentee was prepared to litigate and litigate to
> the finish against the defendant there involved . . . [(3)] *whether the prior case was
> one of those relatively rare instances where the courts wholly failed to grasp the
> technical subject matter and the issues in suit*; and [4] whether without fault of his
> own the patentee was deprived of crucial evidence or witnesses in the first
> litigation.[58]

Gammino does not contend that he lacked incentive to prosecute the SWB case, that he was

deprived of any discovery, that crucial witnesses were unavailable, or that the proceedings were in

any other way deficient.  Instead, citing the above-emphasized language, Gammino argues that he

did not have a full and fair opportunity to litigate because the SWB did not run the "mandatory test

of comparing the single piece of prior art it found with Challenged Claims to determine if the prior

art had all of the elements of a challenged claim."[59]  But Gammino is simply rehashing arguments

already considered—and ruled upon—by the Texas court.  It is inappropriate to consider whether

---

[56] Sprint's Reply in Supp. of Mot. for Summ. J. of Invalidity of '125 Patent Claims 3, 17, and 31
and '650 Patent Claims 2 and 4 Under Blonder-Tongue at 1 [doc. no. 42].

[57] Blonder-Tongue, 402 U.S. at 332–34.

[58] Stevenson, 713 F.2d at 709 (emphasis added).

[59] Pl.'s Opp'n to Sprint's Motion for Partial Summary Judgment at 1.

the SWB decision was either incorrect or subject to disagreement;[60]  Blonder-Tongue "does not

authorize unbridled excursions into the record of the earlier trial before applying the estoppel of the

previous judgment."[61]  Indeed, Blonder-Tongue "considered and rejected the notion that patents

were per se so complex that a rule permitting infinite litigation of patent validity was required."[62]

Even if this Court were permitted (or willing) to engage in a wholesale review of the Texas

court's decision, the decision would withstand scrutiny.  After presiding over two years of

litigation between Gammino and Southwestern Bell, the Texas court issued a reasoned and detailed

analysis of Gammino's case.  After hearing oral argument, the Federal Circuit affirmed the Texas

court's "thorough opinion"  for the "reasons stated in the district court's opinion."[63]  The Federal

Circuit further noted that "[n]o purpose would be served by simply retracing the analysis of the

district court, which is fully sufficient to resolve this appeal."[64]

Gammino strenuously objects to the Texas court's failure to conduct a element-by-element

analysis.  But as the Texas court properly recognized, a patentee's accusations of infringement can

serve as a binding admission that satisfies the accused infringer's evidentiary burden to show

---

[60] Stevenson, 713 F.2d at 709. ("Although there is no exhaustive list of appropriate inquiries, it is clear from the case law that has developed since Blonder-Tongue that an inappropriate inquiry is whether the prior finding of invalidity was correct."); Miss. Chem. Corp. v. Swift Agri. Chem. Corp., 717 F.2d 1374, 1377 (Fed. Cir. 1983); Kaiser Indus. Corp. v. Jones & Laughlin Steel Corp., 515 F.2d 964, 985 (3d Cir. 1975) cert denied by 423 U.S. 876 (1975) and opinion amended by 524 F.2d 1154 (3d Cir. 1975); Westwood Chem., Inc. v. United States, 525 F.2d 1367, 1374 (Ct. Cl. 1975).

[61] Kaiser Indus., 515 F.2d at 985 (noting that the opinions in the prior suit "are internally consistent, creditable analyses that appear compatible both with the language of the patent at issue and the principles of controlling law").

[62] Id. at 978.

[63] Gammino v. Southwestern Bell Telephone, L.P., 267 F. App'x 949, at * 1 (Fed. Cir. 2008).

[64] Id.

invalidity, and may excuse the court from performing an element-by-element comparison of the claim to the prior art item in question.[65]  In SWB, Gammino accused the prior art of infringing his claims, and in so doing, performed a one-to-one mapping of the limitations to the accused products.[66]  The court, using Gammino's *own* interpretation, then determined the products were invalid.  That approach is fully consistent with the precedent of the Federal Circuit.

There is no adequate justification to disturb SWB's holding. Gammino is estopped from reasserting claims 3, 17 and 31 of the '125 patent and claims 2 and 4 of the '625 patent, and Sprint's Motion for Summary Judgment on Counts III and IV of Gammino's Second Amended Complaint will be granted.

B.    SPRINT'S SECOND MOTION FOR SUMMARY JUDGMENT

In its second motion for summary judgment, Sprint argues that the Texas court's ruling invalidated all but two dependent claims of the '125 and '650 patents, and that Gammino is now fully estopped from asserting either patent.  Alternatively, Sprint contends that even if Gammino successfully withdrew claims from SWB's summary judgment motion with his Amended

---

[65] See Vanmoor, 201 F.3d at 1366; Enzo Biochem, Inc. v. Gen-Probe, Inc., 424 F.3d 1276, 1280 (Fed. Cir. 2005); Evans Cooling Sys., Inc., 125 F.3d at 1451 (holding patent invalid under on-sale bar where accused product was offered for sale prior to the critical date of the patented invention); Teva Pharma. Indus. Ltd. v. Astrazeneca Pharm. LP, No. 08-4786, 2010 WL 4139043, *8–9 (E.D. Pa. Oct. 20, 2010).

[66] See Sprint's Reply in Supp. of Mot. for Summ. J. of Invalidity of All Asserted Claims Ex. L (Gammino's First Disclosure of Asserted Claims and Infringement Contentions) ("[e]ach element of each claim is literally present in SWB's switches and phones").

Disclosure, the withdrawn claims are not "patentably distinct" from other invalidated claims and prior art.[67]

In response, Gammino claims that the <u>SWB</u> decision is only capable of collaterally estopping claims *actually* litigated in the prior suit.  In Gammino's view, the only claims at issue in <u>SWB</u> were those asserted in the Amended Disclosure of Asserted Claims that he submitted after Southwestern Bell filed its motion for summary judgment.[68]  Consequently, Gammino argues that the Texas court's findings of invalidity are decisive—if at all—only with regard to claims 3, 17, and 31 of the '125 patent and 2 and 4 of the '650 patent.

     1.    <u>Which Claims Were Actually Asserted?</u>

Sprint argues that because neither Southwestern Bell nor the court validated Gammino's amended disclosure, Gammino's attempt to "unilaterally withdraw" the previously asserted claims was unsuccessful.  In Sprint's view, because the forty-six asserted claims were the subject of its motion for summary judgment—which was filed two months prior to Gammino's Amended disclosure—and because the Texas court granted that motion, all asserted claims were invalidated.[69]

Sprint further notes that Southwestern Bell filed a counterclaim seeking a declaratory judgment of invalidity, non-infringement, and unenforceability of the '125 and '650 patent which alleged that "on information and belief, all of the claims of the '125 patent and '650 patent are

---

[67] Sprint's Reply in Supp.of Mot. for Summ. J. of Invalidity of All Asserted Claims at 11.

[68] Pl. John R. Gammino's Resp. to Def.'s Second Mot. for Summ. J. Ex. 1-A (stating that the asserted claims are claims 1, 3–7, 15, 17–21, 29, 31–34, 42–44, 47–49 of the '125 patent and claims 1–4 of the '650 patent).

[69] Sprint concedes that two of Gammino's asserted claims were *not* the subject of SWB's motion for summary judgment, but argues that those claims are dependent on the invalidated claims.

invalid under 35 U.S.C. §§ 102, 103 and/or 112."[70]   Moreover, Sprint notes that the Texas court specifically referenced two of the withdrawn claims—22 and 35—in its infringement analysis, indicating that those claims were subject to the court's holding.[71]   Sprint further observes that the Texas court refers interchangeably to the claims at issue as "the asserted claims" or "the patents."

Finally, Sprint argues that Southwestern Bell's brief in support of its motion for summary judgment addressed many of the claims allegedly withdrawn from the litigation by Gammino.[72] Those references, according to Sprint, show that Southwestern Bell asked the Texas court to invalidate *at least* '125 patent claims 1, 3–8. 10–15, 17–22, 24–29, 31–44, and '47–49 and '650 patent claims 1–4.[73]

Sprint contends that Gammino's Amended Disclosure only limited claims he was pursuing in preparation for trial; it had no effect on Southwestern Bell's motion for summary judgment.[74]   Gammino rejects Sprint's characterization, arguing that the Texas court only ruled on the invalidity of the claims asserted in the Amended Disclosure.[75]   Gammino denies that he "unilaterally withdrew" claims from the litigation, and emphasizes that the Texas court "itself directed and requested an amendment."[76]   In addition, Gammino notes that the Texas court

---

[70] Sprint's Reply in Support of Mot. for Summ. J. of Invalidity of All Asserted Claims of the '125 and '650 Patents under <u>Blonder-Tongue</u> [doc. no. 49] at 3 (quoting Ex. E at 18–19).

[71] Sprint's Reply in Support of Mot. for Summ. J. of Invalidity of All Asserted Claims.

[72] Sprint's Mot. for Summ. J. of Invalidity of All Asserted Claims, Ex. G.

[73] Sprint's Reply in Support of Mot. for Summ. J. of Invalidity of All Asserted Claims at 5.

[74] <u>Id.</u> at 7.

[75] Pl.'s Resp. to Defs.' Second Mot. for Summ. J. at 1.

[76] Pl. John R. Gammino's Sur-Reply to Defs. Second Mot. for Summ. J. [doc. no. 53] at 3.

repeatedly referred to "asserted claims" in its opinion.[77]  He further emphasizes that the Texas court's order decided six motions, many of which used or relied upon the Amended Disclosure.[78]

Two background principles guide the resolution of this dispute:  First, as the Supreme Court has recently reaffirmed, there is a strong presumption of validity for patent claims,[79] and it is well-established that the validity of *each claim* must be separately considered and decided independently.[80]  "The on-sale bar is evaluated on a claim-by-claim basis, so that some claims of a patent may be found to be barred while others are not."[81]  Second, "two claims of a patent are presumptively of different scope."[82]

Here, the Texas court did not specify whether it was invalidating only the claims asserted in Gammino's Amended Disclosure, or whether it was invalidating all claims ever asserted in the SWB litigation.  Additionally, the Texas court did not grant the declaratory relief sought by Southwestern Bell's counterclaim.  Indeed, after the Texas court granted Southwestern Bell's Motion for Summary Judgment, Southwestern Bell moved to dismiss, without prejudice, its

---

[77] Id. at 4.

[78] Pl. John R. Gammino's Resp. to Defs.' Second Mot. for Summ. J. [doc. no. 46] at 2.

[79] See Microsoft Corp. v. i4i Ltd. P'ship., --- S. Ct. ----, 2011 WL 222429, * 5 (2011) (reaffirming the "existing presumption of validity of patents," and noting that "[i]n . . . nearly 30 years . . . the Federal Circuit has never wavered in this interpretation of § 282 ").

[80] See 35 U.S.C. § 282 ("Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independent of the validity of other claims . . ."); 800 Adept, Inc. v. Murex Sec., LTD., 539 F.3d 1354, 1369 (Fed. Cir. 2008); Schumer, 308 F.3d at 1316 (Fed. Cir. 2002).

[81] Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1353 (Fed. Cir. 2002).

[82] Kraft Foods, Inc. v. Int.l Trading Co., 203 F.3d 1362, 1366 (Fed. Cir. 2000); see also Seachange Int'l., Inc. v. C-COR, Inc., 413 F.3d 1361, 1368–69 (Fed. Cir. 2005).

counterclaim for a declaratory judgment of unenforceability because its "declaratory judgment counterclaim was not disposed of by the Court as part of the Court's judgment."[83]

The Texas court's (and the SWB parties') lack of specificity distinguishes this case from those cited by Sprint.  For instance, in Perolite Corp. v. Baker Hughes Inc.,[84] the Federal Circuit rejected the patentee's argument that the trial court erred by invalidating all of the claims because only four of the claims were at issue.[85]  But there, both parties approved a final pretrial order which stated the defendant's view that "every claim" of the disputed patent was invalid.[86] Similarly, in Honeywell International Inc. v. Universal Avionics Systems Corporation,[87] the district court expressly maintained jurisdiction over claims the patentee attempted to withdraw, and made a specific finding that the "withdrawn" claims were invalid.  Unlike the courts in Perolite and Honeywell, the SWB court did not explicitly state that it was invalidating claims which Plaintiff withdrew.[88]

In the absence of an express statement by the Texas court, and in view of the strong presumption of patent validity, this Court finds inadequate evidence to conclude that the SWB court intended to specifically invalidate all claims of the '125 and '650 patents.  Although it is true that the Texas court mentioned unasserted claims 22 and 35 in its opinion, those claims were

---

[83] Unopposed Mot. to Dismiss, SWB, (doc. no. 129).

[84] 96 F.3d 1423 (Fed. Cir. 1996).

[85] Id. at 1426.

[86] Id.

[87] 488 F.3d 982 (Fed. Cir. 2007).

[88] See id. at 995 (affirming trial court's express determination to maintain jurisdiction over claims which patentee sought to withdraw).

only discussed in its infringement analysis.  That is not a sufficient basis from which to conclude

that the court had also considered those claims in its invalidity analysis.

Without clear evidence that the unasserted claims were specifically evaluated and

invalidated by the Texas court, this Court cannot find that the Texas court invalidated the '125

patent in its entirety.  That conclusion, however, does not end the analysis.


2.   COLLATERAL ESTOPPEL OF UNASSERTED CLAIMS

Under the previous Blonder-Tongue collateral estoppel analysis,  Defendant's sole burden

was to establish a prior judgment of invalidity for the adjudicated claims.  In order to assert

collateral estoppel against the claims unasserted in SWB, however,  Defendant must establish a

prima facie case of "traditional" collateral estoppel.


a.   General Principles of Collateral Estoppel

The affirmative defense of collateral estoppel, also known as issue preclusion, shields a

defendant from having to litigate issues that have been fully and fairly tried in a previous action

and decided adversely to a party.[89]  The doctrine "relieve[s] parties of the cost and vexation of

multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions,

encourage[s] reliance on adjudication."[90]

---

[89] See Allen v. McCurry, 449 U.S. 90, 95 (1980);  Davis v. United States Steel Supply, 688 F.2d 166, 174 (3d Cir. 1982); In re Docteroff, 133 F.3d 210, 215 (3d Cir. 1997) ("Because the prior judgment was rendered by a federal court, we apply federal principles of collateral estoppel").

[90] Allen, 449 U.S. at 94.

To prevail on a motion for summary judgment based on collateral estoppel, the movant generally has the burden to show: (1) the issues presented in the instant action are identical to those involved in the prior action; (2) the issues must have been actually litigated and resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.[91]

The Federal Circuit has explained that collateral estoppel may apply to patent claims that were not previously adjudicated because the "issues litigated, not the specific claims around which the issues were framed" are determinative.[92] In <u>Bourns, Inc. v. United States</u>, the Court of Claims explained that "[t]here is no reason to employ a different approach in a patent context by looking to the claims litigated instead of to the issues that were decided."[93]

*b.     Application*

The Texas court invalidated Gammino's asserted claims because:

> SWB [met] its burden of proving by clear and convincing evidence that its call-blocking services anticipated Gammino's patents. Its burden of proving anticipation was satisfied by Gammino's allegation that the accused call-blocking services infringed his patents. Stated differently, the fact that Gammino base[d] his infringement claims against SWB on SWB's own prior art call-blocking services render[ed] the claims of his patents invalid.

---

[91] <u>Jones v. United States Parcel Service</u>, 214 F.3d 402 at 405–06 (3d Cir. 2000).

[92] <u>Westwood Chem., Inc. v. United States</u>, 525 F.2d 1367, 1372 (Ct. Cl. 1975); <u>see also</u>, <u>Bourns, Inc. v. United States</u>, 537 F.2d 486 (Ct. Cl. 1976); <u>Medinol, Ltd. v. Guidant Corp.</u>, 341 F. Supp. 2d 301 (S.D.N.Y. 2004); <u>Interconnect Planning Corp. v. Feil</u>, 587 F. Supp. 1495, 1498 (S.D.N.Y. 1984).

[93] <u>Bourns</u>, 537 F.2d at 491.

21

Thus, the Texas court did not determine that prior art existed which invalidated the correct construction of Gammino's claims; instead, it found that prior art existed (the accused products) which invalidated *Gammino's construction* of the claims (which it adopted solely for the invalidity analysis).[94]  Because the Texas court invalidated Gammino's patents on the basis of his binding judicial admissions, it did not actually litigate the issues central to the validity of the unasserted claims.

Indeed, in its alternative infringement holding, the Texas court *rejected* Gammino's interpretation of his patents, concluding that:

> Gammino has failed to meet his burden of introducing any evidence that would demonstrate that [Southwestern Bell] infringes any of the asserted claims of the patents.  Because Gammino can not show that an accused product or service practices every element of at least one claim, SWB can not infringe Gammino's patents as a matter of law.

Considering the invalidity and infringement rulings together, it is evident that the Texas court did not decide whether prior art *actually* anticipated and therefore invalidated the asserted claims. Rather, its first ruling (invalidity) assumed that the prior art was the same (based on Gammino's binding admissions), and its second ruling (infringement) correctly construed Gammino's patents and concluded that "all elements" of Gammino's patents *were not* present in the prior art.

By refusing to apply collateral estoppel to Gammino's unasserted claims, this Court does not suggest that collateral estoppel is generally inapplicable to unasserted patent claims.  Indeed, where the court bases its invalidity finding on its own construction of a patent, the "patentee has once been heard on all the factual issues necessary" to the invalidity determination, and collateral

---

[94] SWB, 512 F. Supp. 2d at 638.

estoppel will apply when those issues are presented in subsequent litigation.[95]  For instance, in Westwood Chemical, Inc. v. United States,[96] the Court of Claims analyzed a prior court proceeding to determine whether to "extend application of the collateral estoppel to unadjudicated claims."[97]  There, collateral estoppel was appropriate because the prior court had actually construed the disputed claims of a patent, and invalidated those claims for obviousness based on that construction.[98]  By contrast, in SWB, Gammino's *own interpretation* of his invention —not the Court's independent construction of his invention—was the basis for theTexas court's finding of invalidity.  And while Blonder-Tongue dictates that Gammino is estopped from reasserting the undisputedly asserted claims, we conclude that Gammino has not yet had his day in court to litigate the validity of the unasserted claims.[99]  The issues bearing on the validity of the unasserted claims in this litigation are not substantively the same as those actually litigated in SWB.

In so holding, this Court notes that "[i]n the end, application of the estoppel 'will necessarily rest on the trial courts' sense of justice and equity.'"[100] And here, the strong presumption that "each claim is to be presumed valid and treated as a complete and independent

---

[95] Bourns, Inc., 537 F.2d at 492.

[96] 525 F.2d 1367 (Ct. Cl. 1975).

[97] Westwood Chem., 525 F.2d at 1380.

[98]  Id. at 1373 (noting that the previous court took evidence and made findings about the disputed patents in order to analyze invalidity).

[99] Cf. Bourns, 537 F.2d at 498 ("It is concluded that, despite verbal differences in the claims, issues identical to those in Dale are presented here and that, having had their one day in court on those issues, plaintiffs should now be collaterally estopped to relitigate those issues against defendant.").

[100] Bourns, 537 F.2d at 497 (quoting Blonder-Tongue, 402 U.S. at 334).

invention" bolsters the fairness of this outcome.[101]   The Court will not extend the Texas court's

holding of invalidity to the unasserted claims.


### IV. Sprint's Motion for Sanctions

Sprint moves for sanctions against Gammino for "filing and refusing to withdraw Counts

III and IV of his Complaint," which assert five claims previously held invalid by the Texas

court.[102]

Rule 11 of the Federal Rules of Civil procedure, in relevant part, permits the Court to

impose sanctions against a party for presenting "patently unwarranted or frivolous legal

arguments."  The Third Circuit has explained that Rule 11 "must not be used as an automatic

penalty against an attorney or party advocating the losing side of a dispute, and it should not be

applied to adventuresome, though responsible, lawyering which advocates creative legal

theories."[103]  Thus, Rule 11 sanctions are appropriate "only if the filing of the complaint

constituted abusive litigation or misuse of the court's process."[104]  "An attorney's conduct should

be tested under a standard of what was 'objectively reasonable under the circumstances.'"[105]

---

[101] Bourns, Inc., 537 F.2d at 492.

[102] Sprint's Mot. for Rule 11 Sanctions against Pl. John R. Gammino for Asserting Five Patent Claims Ruled Invalid in a Prior Case [doc. no. 27] at pg. 1.

[103] Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277, 297 (3d Cir. 2010).

[104] Pensiero, Inc. v. Lingle, 847 F.2d 90 (3d Cir. 1988).

[105] Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994).

Although Gammino's argument that <u>Blonder-Tongue</u> did not preclude relitigation of the previously invalidated claims was ultimately unpersuasive, it was not "patently unmeritorious or frivolous."  Gammino did a "thorough and detailed" evaluation of the <u>Blonder-Tongue</u> assertion prior to filing in this Court.[106]  Moreover, he did not attempt to hide the fact of the prior litigation; in his Complaint, Plaintiff disclosed the <u>SWB</u> decision and explained his argument that <u>Blonder-Tongue</u> did not preclude relitigation of the previously asserted claims.[107]  Because Sprint has not shown that Gammino acted in bad faith by bringing Counts III and IV, Rule 11 sanctions are inappropriate.

## V. CONCLUSION

For the reasons set forth above, the Court will Grant Sprint's Motion for Partial-Summary Judgment and deny Sprint's Second Motion for Summary Judgment and Motion for Sanctions. An appropriate order follows.

---

[106] <u>See</u> Pl.'s Opp'n to Sanctions at 13–14 [doc. no. 28].

[107] <u>See</u> Pl.'s Opp'n to Sanctions at 13–14; Am. Compl. ¶¶ 60–66.