**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN R. GAMMINO, | : | |
| | : | Civil Action No. 2:10-cv-02493-CMR |
| Plaintiff, | : | |
| | : | |
| v. | : | Honorable Cynthia M. Rufe |
| | : | |
| SPRINT COMMUNICATIONS COMPANY L.P., et al. | : | |
| | : | |
| Defendants. | : | |

**SPRINT'S OPPOSITION TO GAMMINO'S MOTION TO AMEND HIS PROPOSED INTERPRETATION OF THE CLAIM TERM "SIGNAL VALUE"**

# TABLE OF CONTENTS

Page

I. BACKGROUND ... 1

II. GAMMINO'S AMENDMENT SHOULD BE DENIED BECAUSE IT SWITCHES A POSITION HE SWORE TO WHEN OPPOSING SUMMARY JUDGMENT, COMES TOO LATE IN THE *MARKMAN* PROCESS, AND HAS NO MERIT ... 2

A. Prejudice, Delay, Or Futility Justify Denial Of A Motion To Amend A Pleading ... 2

B. Mr. Gammino Unduly Delayed Notifying Sprint Of An Intent To Revise His Definition Of A Claim Term That He Swore To When Opposing Summary Judgment And That The Parties Submitted To The Court More Than A Month Ago ... 3

1. Mr. Gammino has a long history prosecuting and litigating the '125 patent, and has no excuse for changing his definition now ... 3

2. Mr. Gammino's latest position contradicts what he swore to when opposing summary judgment ... 5

3. Mr. Gammino's motive is to avoid the non-infringement that would result from the "signal values" interpretation he swore to ... 7

C. Mr. Gammino's Untimely Revision Will Result In Real Prejudice To Sprint ... 9

D. Mr. Gammino's Redefinition Should Be Denied As Futile Because Even If Allowed, He Will Not Succeed At *Markman* In Establishing That Definition ... 11

III. CONCLUSION ... 13

# TABLE OF AUTHORITIES

Page

Federal Cases

Adams v. Gould Inc.,
739 F.2d 858 .......... 3

Cornell & Co. v. Occupational Safety & Health Review Commission,
573 F.2d 820 .......... 3, 11

Cureton v. National Collegiate Athl. Association,
252 F.3d 267 .......... passim

General Protecht Group, Inc. v. United States ITC,
619 F.3d 1303 .......... 12

In re Madera,
586 F.3d 228 .......... 4, 5

N. America Vaccine, Inc. v. America Cyanamid Co.,
7 F.3d 1571 .......... 13

O'Neill v. City of Philadelphia,
289 Fed. Appx. 509, 512 .......... 3, 9

Parker v. Federal Deposit Insurance Corp.,
No. 08-1151, 2011 WL 4640867 .......... 2

Phillips v. AWH Corp.,
415 F.3d 1303 .......... 12, 13

Roton Barrier, Inc. v. Stanley Works,
79 F.3d 1112 .......... 13

Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,
81 F.3d 355 .......... 8

Senza-Gel Corp. v. Seiffhart,
803 F.2d 661 .......... 2

Symantec Corp. v. Computer Associates International,
522 F.3d 1279 .......... 13

Vitronics Corp. v. Conceptronic, Inc.,
90 F.3d 1576 .......... 12

Defendants Sprint Communications Company L.P. *et al.* ("Sprint") submit this Opposition to John R. Gammino's Motion to Allow Plaintiff to Amend His Proposed Interpretation of the Term "Signal Value." (Dkt. No. 107). Mr. Gammino's proposed amendment to the "signal value(s)" claim term:

(1) comes too late in the eight-year period he has been litigating the United States Patent No. 5,509,125 ("the '125 Patent");

(2) flouts the schedule he proposed and this court adopted;

(3) contradicts the interpretation Mr. Gammino swore to in order to avoid summary judgment;

(4) prejudices Sprint on the eve of the Markman hearing that has already been postponed for half a year;

(5) makes no sense on the merits; and

(6) ultimately would be futile.

Mr. Gammino's motion to amend should be denied.

## I. BACKGROUND

On September 22, 2011, in accordance with the Scheduling Order (Dkt. No. 102), Mr. Gammino and Sprint submitted their Joint Statement on Disputed Patent Terms in the '125 Patent. (Dkt. No. 105). Sprint's and Mr. Gammino's definitions were substantively identical to the definition Mr. Gammino swore to in order to defeat Sprint's all claims summary judgment motion. (*See* Dkt. No. 87, at ¶ 3B). More than three weeks later—less than a month before the scheduled tutorial and *Markman* hearings, and less than two weeks before the Parties' exchange of *Markman* hearing exhibits—Mr. Gammino apparently realized that the definition he provided in the Joint Statement would be fatal to any claim that mobile phone systems infringe. For that tactical reason and without any legal or factual justification, Mr. Gammino now proposes that he be allowed to broaden his definition to capture technologies that are nowhere mentioned in his patent, i.e. photonic/optical and digital signals.

In Mr. Gammino's view, this last-minute change will cause no prejudice. He is wrong. Mr. Gammino's revision is significant; it radically enlarges the scope of the patent and marks a far-reaching departure from his position during summary judgment when he defined "signal values" as analog hertz DTMF tones. (*See* Dkt. No. 87, at ¶ 3B; Dkt. No. 89 at 7; Dkt. No. 95 at 70:13-17, 72:20-73:8). Now that he has benefitted from that analog tones-only definition to avoid summary judgment, he wants to re-define "signal value(s)" to say that it also includes photonic (i.e. optical) and digital signals. Should Mr. Gammino prevail in his efforts to re-define the term, Sprint would be left with just a few days in which to complete weeks of analysis and hearing preparation.

For the reasons stated below, Sprint opposes Mr. Gammino's motion to amend and respectfully urges the court to deny his motion.

## II. GAMMINO'S AMENDMENT SHOULD BE DENIED BECAUSE IT SWITCHES A POSITION HE SWORE TO WHEN OPPOSING SUMMARY JUDGMENT, COMES TOO LATE IN THE *MARKMAN* PROCESS, AND HAS NO MERIT

### A. Prejudice, Delay, Or Futility Justify Denial Of A Motion To Amend A Pleading

Mr. Gammino offers his amendment under Rule 15 of the Federal Rules of Civil Procedure. Mr. Gammino's motion does not concern a "pleading" and therefore does not fall under Rule 15. Sprint addresses Rule 15, however, in case the court considers Rule 15 applicable.

As a motion to amend under Rule 15 is "entirely a procedural matter not unique to the field of patent law," Mr. Gammino's motion is governed by Third Circuit law. *See Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed. Cir. 1986). To that point, the Third Circuit has explained that "a District Court may deny a motion to amend . . . if '(1) the moving party has demonstrated undue delay, . . . (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *Parker v. Fed. Deposit Ins. Corp.*, No. 08–1151, 2011 WL

4640867, at *3 (3d Cir. Oct. 7, 2011). While "[t]he mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay . . . at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Cureton v. Nat'l Collegiate Athl. Ass'n.*, 252 F.3d 267, 272 (3d Cir. 2001) (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 863 (3d Cir. 1984)). Indeed, "[i]t is well-settled that prejudice to the nonmoving party is the touchstone for the denial of an amendment." *O'Neill v. City of Philadelphia*, 289 Fed. Appx. 509, 512 (3d Cir. 2008) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). These principles support denial of Mr. Gammino's amendment.

### B. Mr. Gammino Unduly Delayed Notifying Sprint Of An Intent To Revise His Definition Of A Claim Term That He Swore To When Opposing Summary Judgment And That The Parties Submitted To The Court More Than A Month Ago

#### 1. Mr. Gammino has a long history prosecuting and litigating the '125 patent, and has no excuse for changing his definition now

Mr. Gammino's last minute effort to change his proposed definition is inexcusable in light of the age of the patent and its extensive litigation history. He filed the '125 patent application eighteen years ago, and the patent issued more than thirteen years ago. Mr. Gammino has been litigating the patent in numerous courts since October 2003, and has filed a total of nine lawsuits against a litany of defendants, including against Sprint starting in 2004, and Southwestern Bell Telephone starting in 2005. Having placed his patent claims under the litigation microscope for many years, Mr. Gammino simply is not credible in claiming that he discovered his latest interpretation of "signal values" two weeks ago.

In this case, Sprint moved last year for summary judgment on all claims based upon the *Gammino v. Southwestern Bell* ruling, bringing to the forefront the issue of whether the claims asserted against Southwestern Bell Telephone were patentably distinct from the claims asserted against Sprint. (Dkt. No. 38). Before that motion was fully briefed, Mr. Gammino

provided his required Statement of Claim Construction, in which he twice defined "signal values" broadly as "digits (0,1,2,3,4,5,6,7,8,9) that can be dialed on a telephone . . . ." (Ex. A, Plaintiff's Statement of Claim Construction, at 2, 3).[1]

Then, in opposing summary judgment, Mr. Gammino reversed course in his April 2011 sworn Declaration and made the calculated decision to re-define the "signal value(s)" term to include only analog DTMF tones, after he realized that his new narrower definition gave him a tactical angle to oppose Sprint's summary judgment motion. (Dkt. No. 87). He argued the analog-only interpretation at the summary judgment hearing (Dkt. No. 95 at 70:13-17, 72:20-73:8), and endorsed the analog-only definition in his May 2011 Post-Argument Brief in Opposition to Defendants' Motions for Summary Judgment. (Dkt. No. 89). On September 22, 2011, Mr. Gammino submitted to the court his proposed construction of "signal value(s)," affirming for the fourth time his sworn position that "signal value(s)" means analog hertz DTMF signals.[2]

Nonetheless, Mr. Gammino now announces his intent to re-define the "signal value(s)" term yet again and broaden its definition in the Joint Statement to include not only analog but also digital and optical (i.e. "photonic") signals. As the patent's owner and inventor, and an active participant during prosecution and in all the previous litigation, Mr. Gammino had ample time in which to consider the meaning of his patent's terms and the scope of his claims. His attempts to re-define the term after the submission of the Joint Statement should be rejected as untimely. *See In re Madera*, 586 F.3d 228, 234 (3d Cir. 2009) (affirming a district court's denial of a motion to amend as untimely where it came

---

[1] Exhibits are cited as "Ex. __," and are attached to the Declaration of Cotter filed with this Opposition.

[2] There are differences between the parties' definitions of "signal values" in the Joint Statement, but each provided a definition limited to analog DTMF tones. (*See* Dkt. No. 105, at 5-6).

"after the parties had completed discovery, and after the deadline by which time all pretrial motions were due").

While Mr. Gammino says that his latest definition is needed "in order to make it consistent with anticipated evidence and expert testimony," it strains credulity for Mr. Gammino to assert that, just within the past month since filing the Joint Statement, he has unearthed some new evidence and expert testimony that somehow eluded him throughout the previous thirteen years of the patent's life, eight years of litigation, and six months since he swore to the term's meaning to avoid summary judgment. Lacking any new justification for the amendment, Mr. Gammino's motion must be denied. *See Madera*, 586 F.3d at 234 (amendment was not based on new evidence); *Cureton*, 252 F.3d at 273-74 ("[T]he factual information on which the proposed amendment relied was known almost two-and-a-half years before plaintiffs sought leave to amend."). The reality is that there is no new evidence and no new position by Sprint that justifies Mr. Gammino's last-minute attempt to revise a definition that he was the first to adopt.

**2. Mr. Gammino's latest position contradicts <u>what he swore to when opposing summary judgment</u>**

Even ignoring Mr. Gammino's long history litigating the patent and tardy attempt to modify the "signal value(s)" definition, Mr. Gammino's behavior in opposing summary judgment shows that this case presents far more than a ticking clock. Indeed, what Mr. Gammino neglects to reveal is that the "signal value(s)" term he seeks to re-define was defined by him in opposing Sprint's motion for summary judgment of all claims. As the court may recall, Mr. Gammino argued that Claim 29 (previously invalidated in *Southwestern Bell*) was patentably distinct from Claim 22 (asserted here) primarily because Claim 22 "uses signal values transferred by hertz tones . . . [and] Claim 29 does not use the signal values but uses dialing signals." (Dkt. No. 87, at ¶ 3B). As Mr. Gammino declared under penalty of perjury, "signal values" means hertz tones, a type of analog signal:

> Claim 22 uses signal values transferred by hertz tones and any one signal value by itself does not match up with any dialing signal. Multiple signal values must be decoded to determine a dialing signal. . . . The multiple signal values transferred by hertz tones allow Claim 22 to make decisions that Claim 29 cannot make.

*Id*. His confidence in this definition is proven by his position at oral argument, where Mr. Gammino's counsel repeatedly emphasized the importance of the same analog definition of "signal values":

> they claim that 22 is like 29. 22 is so far from 29 it is almost unbelievable. 22 deals with signal values which are hertz tone values, sounds that come out which is different than the dialing signals that is used for 29.

(Dkt. No. 95 at 70:13-17);

> Claim 35 is a claim which also uses signal values which is they -- Sprint claims that claim 29 is identical to 35. That is not true, because claim 29 deals with dialing signals which is like the number 1, 2, 3, 4, 5, 6, 7, 8, 9. The claim 35 doesn't, it deals with signal values which is something totally different that you can't read signal values.
>
> Signal values are electronic things that are sent out to the recipient phone or recipient device which then has to scramble those and decide out what they mean.
>
> 35 decides based on signal values, 29 does not, and they are very different, they are very different. Mr. Gammino said they were different in his declaration.

(*Id.* at 72:20-73:8). Mr. Gammino then asserted the same definition in his Post-Argument Brief in Opposition to Defendants' Motions for Summary Judgment:

> Claim 22 recites signal values which are transferred by hertz tones. Any one signal value by itself does not match up with any dialing signal. Multiple signal values must be decoded to determine a dialing signal. . . . Claim 22 requires apparatus that distinguishes multiple signal values and Claim 29 does not.

(Dkt. No. 89, at 7).[3]

---

[3] In accepting the definition of "signal value(s)" as recited in Mr. Gammino's opposition briefs, Sprint does not suggest that it agrees with Mr. Gammino's conclusion that the claims at issue here are patentably distinct from those considered in *Gammino v. Southwestern Bell.*

**3. Mr. Gammino's motive is to avoid the non-infringement that would result from the "signal values" interpretation he swore to**

Having used his analog-only interpretation of "signal values" successfully to avoid summary judgment on invalidity (*see* Dkt. No. 99, at 20-24), Mr. Gammino now asserts that "signal values" as used in Claims 22 and 35 means not only analog tones, but digital and optical signals as well. Thus, to avoid invalidity, Mr. Gammino wanted the court to believe that Claims 22 and 35 are patentably distinct from Claim 29 because Claims 22 and 35 are limited to analog signals. But now, for the *Markman* decision, Mr. Gammino wants the court to believe that Claims 22 and 35 include analog, digital, and optical signals. The justification for Mr. Gammino's about-face is not, as he contends, "to make it consistent with anticipated evidence and expert testimony." Rather, Mr. Gammino has simply come to the conclusion that while his previous definition of "signal value(s)" was advantageous to defeat Sprint's motion for summary judgment, it would be disadvantageous for purposes of claim construction, and ultimately non-infringement.

Such self-serving motives are insufficient to justify Mr. Gammino's untimely attempt to modify the Joint Statement. *See Cureton*, 252 F.3d at 273 ("while bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires that we focus on the movant's reasons for not amending sooner" (internal citations omitted)). Frankly, the only reason Mr. Gammino's new "signal value(s)" definition did not come sooner is because it would not have suited his purposes in avoiding summary judgment to swear to such a broad interpretation.

This is not the first time Mr. Gammino has switched positions on this particular issue to gain the best tactical advantage. In January 2011, Mr. Gammino submitted claim constructions to Sprint where he provided an expansive definition of signal values. Regarding Claim 22, he explained:

> Signal values mean digits (0,1,2,3,4,5,6,7,8,9) that can be dialed on a telephone and an example is a telephone call dialed 101-0228-011-81-3-3348-1393.

(Ex. A, Plaintiff's Statement of Claim Construction, at 3). Regarding Claim 35, he explained:

> Signal values mean digits (0,1,2,3,4,5,6,7,8,9) that can be dialed on a telephone, entered into a telephone keypad, spoken into a voice receiving device, or entered in other ways. An example is a telephone call dialed 101-0228-011-81-3-3348-1393.

(Ex 1, Plaintiff's Statement of Claim Construction, at 2). As noted above, when fending off Sprint's motion for summary judgment, Mr. Gammino decided that the scope of his previous definition did not suit his strategy, so he swore to the narrowed definition of analog hertz tones. Now, having survived that motion, Mr. Gammino once again views an expansive definition as the more advantageous one and asks the court to ignore his declaration. Yet, having sworn to and successfully advocated an analog definition of signal values, Mr. Gammino is now estopped from adopting a contradictory position to suit his own tactical whims. *See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d cir. 1996) (explaining that judicial estoppel "is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. . . . [I]t is designed to prevent litigants from playing fast and loose with the courts" (internal quotation marks omitted)).

In light of Mr. Gammino's ever-shifting claim constructions, Sprint included the term "signal value(s)" in the Joint Statement in order to obtain some certainty as to what Mr. Gammino claimed as his invention. Sprint's decision was driven by concern that otherwise, Mr. Gammino would continue to change his position with every motion then before the court. Further, Sprint was deliberate in selecting a definition that would reduce the outstanding issues and focus the litigation, proposing a construction that tracked nearly identically with the definition that Mr. Gammino swore to on summary judgment, and which had support in

the patent specification. Granting Mr. Gammino's instant motion would penalize Sprint for relying on Mr. Gammino's own statements, and reward Mr. Gammino for engaging in fast and loose litigation.

Mr. Gammino's motion misstates the reasons underlying Sprint's opposition to his request to re-define the term. It is not Sprint's position that interpretation of terms "is set in stone for the entire case." Rather, it is Sprint's position that once Mr. Gammino has sworn to an analog DTMF tones-only definition to avoid summary judgment, and once the parties submitted their Joint Statement, with the tutorial and *Markman* hearings fast approaching, the court and Sprint are entitled to rely on the definition that Mr. Gammino put forth both during summary judgment and in the Joint Statement. While some natural fluidity may exist in the construction of patent claim terms, at some point, a party—particularly the plaintiff and patent owner who has already adopted one construction to avoid summary judgment—must be held to the scope of the patent as that party defines it. That moment has come and passed for Mr. Gammino.

### C. Mr. Gammino's Untimely Revision Will Result In Real Prejudice To Sprint

Mr. Gammino's efforts to re-define the "signal value(s)" term come just as the parties prepare for claim construction arguments. Given the compressed time frame in which to prepare for the hearings, Mr. Gammino's tardy amendment creates real prejudice to Sprint. *See Cureton*, 252 F.3d at 273 ("[S]ubstantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend."). Such prejudice "is the touchstone for the denial of an amendment." *O'Neill*, 289 Fed. Appx. at 512.

In assessing prejudice, the court is required to "focus on the hardship to the defendants if the amendment were permitted." *Cureton*, 252 F.3d at 273. To that point, the change proposed by Mr. Gammino would result in significant waste of resources already expended by Sprint, and in resources that Sprint would have to spend responding to Mr.

Gammino's amendment. As explained above, for more than six months, Mr. Gammino and his counsel have consistently defined the "signal value(s)" term as meaning analog DTMF signals, and Sprint adopted its own construction based entirely upon the definition supplied by Mr. Gammino. In preparation for the *Markman* hearing, Sprint has based its efforts and arguments on the parties' mutually accepted definition. Mr. Gammino's attempts to supply a new definition just before the *Markman* hearing would force Sprint to dispense with months of legal and technical analysis, and rush to provide new analysis, briefing, and argument based on Mr. Gammino's shifting positions.

Not only would Sprint be forced to spend significant time re-analyzing the patent and technology in light of Mr. Gammino's revised definition, but that definition would create a distraction from the real areas of dispute. The originally agreed-upon definition allowed for significant simplification of the case, both at *Markman* and for future summary judgment and any trial. The agreed-upon definition, which defines "signal value(s)" as dual-tone multi-frequency *analog* signals, necessarily excludes digital telephones. Because Sprint's accused system is entirely digital, this definition effectively removed Claims 22 and 35 and their dependant claims from consideration. Thus, the parties and this court would have been required only to address the six disputed terms that relate to independent Claim 8 and its dependents, and which do not contain the term "signal values."[4]

Mr. Gammino asserts as justification for his amendment that "Sprint has not yet briefed a proposed interpretation of 'Signal Value' and has presented no expert testimony on 'Signal Value.'" Yet, these facts demonstrate precisely why Mr. Gammino's proposed amendment should be denied as prejudicial; Sprint has not briefed or offered expert testimony on the term because, until October 14, 2011, Mr. Gammino and Sprint's were in

[4] Sprint takes no position in this Opposition on the proper interpretation of claim terms in Claims 8 – 15.

total agreement as to the definition of "signal values." Consequently, there has never been the need for the parties—or the court—to spend time construing a term to which there was complete agreement. Mr. Gammino's redefinition effectively puts into play a term that was never previously an issue in this case, and should accordingly be rejected. *See Cornell & Co.*, 573 F.2d at 823-24 (finding significant prejudice because the proposed amendment changed the legal and factual basis of claim and prevented defendant from presenting a defense).

**D. Mr. Gammino's Redefinition Should Be Denied As Futile Because Even If Allowed, He Will Not Succeed At *Markman* In Establishing That Definition**

Even if the court were to accept Mr. Gammino's proposed amendment to the "signal value(s)" term, the *Markman* process would reveal that such a construction has no merit, and in addition, other terms' constructions and the intrinsic record compel the conclusion of no infringement. Regarding "signal value(s)," Mr. Gammino's alleged support for the analog/digital/optical definition cites one sentence of the '125 patent which states:

> The telephone number sequence is converted to electrical signals which are transmitted to microcontroller 230.

(Dkt. No. 107, at ¶ 9). However, Mr. Gammino pulls the sentence badly out of context. In fact, when viewed in context, the sentence supports the existing interpretation of "signal value(s)" as being analog only. Reading the prior sentence in Column 6 along with the cropped sentence cited by Gammino makes this clear:

> Decoder/DTMF generator 260 receives a plurality of telephone numbers which are provided by telecommunications device **210**. The telephone number sequence is converted to electrical signals which are transmitted to microcontroller 230.

'125 Patent, Col. 6, Lns. 56-60. Thus, the two sentences together establish that the telecommunications device 210 (i.e. a telephone or other device that does the dialing) provides DTMF tones—that is, signal values—that are then received by the decoder/DTMF generator 260, converted by the decoder into electrical signals, which in turn are transmitted

to the microcontroller 260 for processing. It is ludicrous—i.e. futile—for Mr. Gammino to suggest that the signal values, when dialed, were initially electrical signals that were suitable for processing. Rather, a complete reading of the specification makes clear that the signal values are analog DTMF tones that are only later converted into electrical signals.

In addition, the optical (i.e. "photonic") portion of Mr. Gammino's newly-proposed definition finds no support either in Mr. Gammino's previous constructions or, most importantly, in the specification. According to Mr. Gammino, a signal value "may include . . . photonic signals." (Dkt. No. 107, at ¶ 7). He asserts in his proposed Order that "[i]n the Joint Statement, the un-amended and un-briefed proposed interpretation of 'Signal Value' includes transmitting by photonic signals (measured in hertz)." (Dkt. No. 107, at ¶ 8). In fact, there is not a single reference in the Joint Construction to anything but analog hertz DTMF tones. Likewise, there is not a single reference in the patent specification to any photonic, optical, fiber optic, or related photon- or light-based technology, much less such a reference directed to the meaning of "signal value(s)." Nor does Mr. Gammino claim such a reference exists. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("A patent's specification 'is the single best guide to the meaning of a disputed term.'" (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996))). Incredibly, Mr. Gammino apparently argues that the DTMF analog tones listed in the existing Joint Statement are "transmit[ed] by photonic signals (measured in hertz)" (Dkt. No. 107 at ¶ 9), which conflicts with common sense and basic physics—tones are sound, not light.

Lacking any intrinsic support from within the patent or file history, Mr. Gammino's "photonic signals" can only be based on an extrinsic source, likely from Mr. Gammino's expert, Ronald Brown, or from Mr. Gammino himself. Yet, it is well-settled that "an expert's subjective understanding of a patent term is irrelevant." *See Gen. Protecht Group, Inc. v. United States ITC*, 619 F.3d 1303, 1310 (Fed. Cir. 2010) ("[W]e have cautioned that

'conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." (quoting *Phillips*, 415 F.3d at 1315)); *see also Symantec Corp. v. Computer Assocs. Int'l*, 522 F.3d 1279, 1291 (Fed. Cir. 2008) (disregarding expert testimony that "simply recite[d] how each expert would construe [a] term . . . based on his own reading of the specification"). An inventor's statements regarding the proper construction of a claim term are likewise of little weight. *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1126 (Fed. Cir. 1996) ("[A]n inventor's 'after-the-fact testimony is of little weight compared to the clear import of the patent disclosure itself.'" (quoting *N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993))). In either case, Mr. Gammino's disconnected inclusion of "photonic signals" has no basis in the intrinsic record, and demonstrates only the illogic of his revised definition.

In addition, other claim terms, when properly interpreted under the rules of claim construction, are likely to define claims that Sprint cannot infringe. For example, the '125 Patent, in light of its prosecution history, requires first that any infringing technology block all international calls, second, that the technology block calls "irrespective of" a second plurality of digits, and third, that the processing of the calls occur before the call reaches the network or switching center. Sprint's technology does not practice any of these limitations. That is, whether "signal value(s)" is construed to include only analog signals or also optical and digital signals, Mr. Gammino still cannot prove infringement. In light of this, Mr. Gammino's requested amendment should be rejected as futile.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Mr. Gammino's Motion to Amend His Proposed Interpretation of the Term "Signal Value" should be denied.

Dated: November 4, 2011

Respectfully submitted,

s/ John J. Cotter

John J. Cotter
George S. Haight
K&L GATES LLP
State Street Financial Center,
One Lincoln Street
Boston, Massachusetts 02111-2950
(617) 261-3100
john.cotter@klgates.com

*Counsel for Defendants Sprint Communications Co. L.P., et al.*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the electronic case filing ("ECF") system on November 4, 2011, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and a paper copy will be sent by mail to non-registered participants.

s/ John J. Cotter
John J. Cotter