IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN R. GAMMINO, | : |
| | : Civil Action No. 2:10-cv-02493-CMR |
| Plaintiff, | : |
| | : |
| v. | : Honorable Cynthia M. Rufe |
| | : |
| SPRINT COMMUNICATIONS | : |
| COMPANY L.P., et al. | : |
| | : |
| | : |
| Defendants. | : |

# Plaintiff's Markman Hearing Brief

## I. Introduction

When construing disputed claim terms, the Court looks first to the claim terms and their ordinary meaning as understood by one of ordinary skill in the art. The Court will look to the specification for guidance and "[f]inally,…refer to the prosecution history." Liquid Dynamics Corp. v. Vaughan Co., Inc., 355 F.3d 1361, 1367, 1368 (Fed.Cir.2004).

The '125 patent prevents and enables telephone calls by comparing dialed signals with predetermined signals recorded in memory. See Figures 4A and 4B which have a flow chart diagram. An exemplary function is to receive a sequence of digits and as cited in the patent "compare received sequence with table entries at any of several particular places in the dialing sequence," and then "match" and "block call" or "transmit digits." Figures 4A and 4B; specification Column 9, Ln. 30-37.

In accordance with the patent, table entries or other memory entries contain predetermined signals (claim 8) predetermined digit sequences (claim 22) and test signal value sequences (claim 35) (collectively, "Predetermined Sequences").

1

## II. The '125 Patent Does Not Require the Blocking of All International Access Calls (Claims 8, 10, 14, 22, 28, 35, 38)

There are 636 different types of international access code calls and 54 different international access codes and international area codes. Exhibit A. The '125 patent does not require the blocking of all of those calls.

### A. Claims

Claim 1 provides: "[t]elecommunications apparatus for *selectively preventing* establishment of a telephone call to a telephone number having a central office exchange code" and prevent "if said evaluated third plurality are determined to be…*respective predetermined signals* used for international dialing." (Emphasis added).

Claim 2 provides, "[t]elecommunications apparatus according to claim 1, wherein said signals which are used for international dialing correspond to a "01" dialing sequence." Claim 2 blocks calls with 01 in the third plurality but does not require the blocking of 011 calls or 0809 calls or calls with the other 51 international area codes in the third plurality. Claims 9, 23, 30 and 46 also are "01" claims.

Claims 8- 13 <u>enable</u> calls if the dialed signals are not predetermined signals. Claims 8-13 provide for <u>transmitting calls</u> to the <u>communication pathway.</u>

Claim 26 of the '125 patent provides: "[a] method apparatus according to claim **22**, wherein said respective predetermined signals which are used for international dialing **are one of** a) an international access code and b) an international area code."

Claims 6, 13, 20, 34, 41 and 49 also define predetermined signals (or other Predetermined Table Sequences) to be **one of** an international access code and an

international area code. Specific international access calls are prevented not all international access calls.

Certain claims such as Claims 3, 10, 22, 31 and 38 provide that a call will be prevented or enabled if both the first and third plurality matches the Predetermined Sequences. For access calls covered by the patent, digits in the first plurality could be 101, 950, 800, 866, 877, 888 or other access numbers. If there is no match of the digits in the first plurality with the Predetermined Sequences in the first plurality those calls will <u>not</u> be prevented, including calls with international codes in the third plurality. As such, all international access calls do not have to be prevented.

**B. <u>Specification</u>**

The specification has the following language:

The present invention relates to telecommunications and more specifically to the <u>selective disablement</u> of telecommunication devices. In particular, a method and apparatus is disclosed for monitoring a sequence of digits input to a telecommunication device and <u>selectively</u> disabling the telecommunication device if <u>particular digits are detected</u> at defined locations in the sequence."

Column 1, Ln. 7-15 (Emphasis added)

"[A]n exemplary embodiment of the present invention, detection of one or more of the following <u>digit sequences in the dialing sequence</u> results in the blocking of a telephone call":

| Table I |
|---|
| 10XXX01, |
| 950XXXX01 |
| 1800XXXXXXX01 |

Column 5 Ln. 5-14. The specification in that example shows prevention of 3 types of international access calls out of the 636 different types of international access calls.

3

In addition, it is possible to block international calls which are accessed using a three digit area code. Exemplary international telephone numbers which result in a blocked call include:

```
                         TABLE II
                      950XXXX0809
                      1800XXXXXXX0809
                      10XXX0809
```

Column 5 Ln. 17-25

The specification says it is <u>possible</u> to block those three types of calls, which is contrary to the allegation that **all** international access calls or international access calls must be blocked.

There are other statements in the specification which indicate that the patent selectively prevents calls based on comparing dialing digits to Predetermined Sequences and preventing calls if there is a match. Eight examples of those statements are on Exhibit B hereto.

## C. <u>Prosecution History</u>

In an Amendment to Application, Mr. Gammino stated:

Appellant is claiming an invention which includes restriction in the establishment of international telephone calls which are dialed using certain sequences.

File History at 294, Amendment Application p. 31. In an Appeal Brief before the PTO, Mr. Gammino later made the same point. File History at 514, Appeal Brief, p. 10

If Gammino meant to block ALL international calls he would have said: "Appellant is claiming an invention which includes restriction in the establishment of international telephone calls." He could have ended there, instead he included the clause

4

with, "which are dialed using certain sequences," meaning that prevented calls have to be international PLUS have been "dialed using <u>certain sequences</u>."

Actual use of Mr. Gammino's invention reveals that the user has the option to block one type of international call, many types of international calls or all international calls dialed with an access code. The selective prevention of international access calls is confirmed by Mr. Gammino's license agreement with **TECHNOLOGY SERVICE GROUP, INC.** ("TSG") dated October 27, 1992 where he licensed use of his invention to prevent 7 particular types of international access calls:

10xxx-01
950-10xx-01
1800-xxx-xxxx-01
800-xxx-xxxx-01
950 -10xx-809
1800-xxx-xxxx-809
10xxx-809

See TSG Agreement, File History at 308-319, list of types of calls at 318.

The TSG transaction involved 7 types of international access calls out of the 636 different types of international access calls.

On April 16, 1992, New York Telephone using Gammino's invention advised the Port Authority Bus Terminal that it will "block specific international calls":

10xxx-01
950-10xx-01
1800-xxx-xxxx-01
800-xxx-xxxx-01
950-10xx-809
1800-xxx-xxxx-809
10xxx-809


See April 16, 1992 New York Telephone Letter at File History at 97.

5

New York Telephone blocked 7 types of international access calls out of 636.

When his invention was implemented at the Port Authority, Mr. Gammino was involved in the selection of which types of international access calls would be prevented and which would NOT be prevented.  Certain access calls with 01 or 809 in the third plurality of dialing sequences were prevented. International area code 809 covered the Dominican Republic which had a terrible history of fraudulent international calls.  No more than 5 international area codes were blocked and about 47 were NOT blocked, meaning that calls to most countries or providences like the following were not blocked: Grenada, Bermuda, British Virgin Islands, Cayman Islands, Trinidad and Tobago, Ontario, Alberta, Quebec, New Brunswick, Canada, etc.

In patent prosecution, Mr. Gammino many times stated claim language that provides that calls would be prevented or enabled IF the dialed signals match Predetermined Sequences. As examples see, File History at 106, 107, 231, 271, 278, 301, 304, 328, 331, 333, 376, 377, 378, 379, 383, 514, 730, 734.

In patent prosecution, Gammino did differentiate his invention from the <u>Bimonte</u> patent (U.S. No. 4,577,066) when he said his invention "will block all international calls."  That statement is true because the patent will block all international calls **if** all the international access codes and international area codes are recorded in the Predetermined Sequences. The patent has no requirement that all international access codes and international area codes must be in the Predetermined Sequences.

6

Sprint's argument that Mr. Gammino's patent requires the blocking of all international calls must be rejected because claims 8-13 of the '125 patent relate to <u>enablement</u> of international access calls if there is no match with the digits in the Predetermined Sequences.

**D. Sprint's Recently Proposed Construction Requiring the Blocking of All "International *Access* Calls" Lacks Any Support**

Sprint in its claim construction brief and reply brief argues the "preventing function of the claims of the patents require the blocking <u>of all international</u> telephone calls." See Sprint Markman Brief at 22; Sprint Reply Markman Brief at 5-9. Sprint, however, in the Joint Claim Chart changed its proposed construction to "if the call is an international, <u>access code</u> call, it is always blocked." See, Joint Claim Chart, Sprint's proposed construction of # 1 and # 9 (Emphasis supplied).

Sprint's abandoned construction was based on an alternative finding by the court in <u>Gammino v. SWB</u> on "all international calls" and arguments taken out of context in the patent prosecution by Mr. Gammino on "all international calls." However, there is no finding in the <u>Gammino v. SWB</u> case on "all international <u>access</u> calls" and Mr. Gammino made no statement on all international <u>access</u> calls. "International calls" and "international <u>access</u> calls" are very different. Sprint simply has no support for the recently discovered argument that the patent requires the blocking of "all international access" calls.

**III.    <u>Apparatus Disclosed in the '125 Patent</u> (claims 8-14, 22-28, 35-41)**

The specification discloses apparatus used in the various functions in the patent. The disclosures are stated in Mr. Gammino's two claim construction briefs. The

disclosures include decision making components used to decide whether to prevent or enable a call.

## IV. There is No Requirement that Decision Making Apparatus Must be on the "Commercial Side" of a Network

Sprint argues that the patent requires that decision making apparatus to be on "commercial side" and close to the phone. The patent does not disclose such limitation.

Also, the specification states: "Although switch **240** is shown connected between telecommunications device **210** and tone converter **260**, it is contemplated that switch **240** can be <u>located anywhere between communications device **210** and telecommunications lines **250**</u> which would cause the telephone call to be terminated when the switch is opened." Column 6 Ln. 66-67; Column 7 Ln. 1-4. (Emphasis added). The "microcontroller **230** may signal switch **240** to open. This causes a termination of telephone call." Column 6 Ln. 63-65. There is no limitation on location of the decision making apparatus in the network.

## V. Irrespective of Second Plurality Means that a Call is blocked without Regard to or Regardless of the Digits in the Second Plurality (Claims 8, 22, 35)

Claim 35 states: "… at least partially preventing use of … device if said third group of signal values is … identical to said plurality of first test signal value sequences <u>irrespective of said second group of signal values</u>." Mr. Gammino suggests that "irrespective of" means "without regard to" or "regardless." Sprint's proposal is "without analyzing the content of said second plurality of dialing signals." The patent, however, does not require an absence of analysis; instead the limitation is based on the <u>result</u> of a call being blocked regardless of the second plurality.

Under Claim 35, the second group of signal values cannot change the prevention of a call. That is a very clear application of the claim language and there simply is no prohibition of analyzing the second plurality or "don't care" values. In fact, "don't care" values may be analyzed. The specification provides: "[e]exemplary "don't care" values which follow the second group of dialing digits may include a country code, a city code and a local number." Column 4, Ln. 57-59.  Like the second plurality, the country codes, city codes and local numbers are don't care values and they will be analyzed to complete the call.

In patent prosecution Gammino stated, "Applicant's claims are directed toward preventing international telephone calls <u>regardless of the indicated carrier</u>."  File History at 304.  The language is result oriented. Sprint's proposal, with a modification to reflect the proper emphasis on the result of a call, would be: "without [remove-analyzing] *using* the content of said second plurality" to change the prevention of the call.

### VI. <u>Definition of Signal Value</u> (Claims 22, 24, 25, 27, 35, 36, 38, 39, 40, and 41)

The first two sentences of the meaning of Signal Value state the type of signals that constitute "signal value":

> "Signal value:" Informational signals representing the value of dialed digits. For example, these may include electrical and/or photonic signals; and the signals may be in the form of analog tones representing the dialed digits, digitally encoded representations of the dialed digits, or a combination of the two.

The specification specifically discloses the use of electrical signals: "The telephone number sequence is converted to electrical signals which are transmitted to microcontroller 230." Column 6, Ln. 58-60.  Also, the specification discloses the use of

the invention in cellular networks and cellular applications as follows.  "Furthermore, telecommunications line **170** may be coupled to a variety of telephone networks (e.g. a cellular network). Thus, the invention may also be used for portable (including cellular) applications." Column 3 Ln. 33-36.  Because electrical signals are used in cellular networks and cellular applications, that statement in the specification further indicates a use of electrical signals in the invention.

## Conclusion

The Court should construe the disputed terms using the constructions set forth in Mr. Gammino's Claim Construction Briefs and as stated above.

                        Astor Weiss Kaplan & Mandel LLP

                        By:_/s/wmm_____

                            W. MARK MULLINEAUX, ESQ.
                            BRIAN DISCOUNT, ESQ.
                            200 South Broad St. Suite 600
                            Philadelphia, Pa. 19102
                            (215) 790-0100

## CERTIFICATE OF SERVICE

I, **William M. Mullineaux,** hereby certify that on November 7, 2011, Plaintiff's Markman Hearing Brief was filed electronically with the Clerk of the Court and was served via the Court's CM/ECF System which will automatically provide electronic notice of the filing upon all counsel of record, including:

**John J. Cotter, Esquire
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
John.Cotter@klgates.com**

        **ASTOR WEISS KAPLAN & MANDEL, LLP**


**BY:___/s/wmm_____
    WILLIAM M. MULLINEAUX
    Attorney for Plaintiff
    Attorney I.D. No. 40964
    230 South Broad Street
    Suite 600, The Bellevue
    Philadelphia, PA 19102
    (215) 790-0100 (telephone)
    (215) 790-0509 (facsimile)**